UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLYING R AVIATION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1341-B |
| | § | |
| BONDIO, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Flying R Aviation, LLC ("Flying R")'s Second Motion for Entry of Default Judgment (Doc. 57). Because Flying R has shown it is entitled to some, but not all, of the relief it seeks, the Court **GRANTS in part** and **DENIES in part** the motion.

## I.

## BACKGROUND

This is a contract dispute involving co-ownership of an airplane. Flying R bought a 50% interest in a Gulfstream jet (the "Airplane") from Bondio, LLC. Doc. 55, Second Am. Compl., ¶ 1. Bondio subsequently sold most of its ownership interest in the Airplane, retaining only a 5% interest. *Id.* Flying R and Bondio's use and operation of the Airplane is governed by a co-ownership agreement (the "Agreement"). *Id.* ¶ 2. The Agreement provides that Bondio may not use the Airplane more than 1.5 days a month based on its 5% interest, and that parties must schedule and coordinate their use of the Airplane through Flying R, as Flying R is the "Managing Party." *Id.* ¶¶ 4–5. As Managing Party, Flying R has authority over scheduling, flight crew, maintenance, and other support services, and to make decisions on behalf of the owners. *Id.* ¶ 5. The Agreement provides that in the event

of a conflict, Flying R, as the majority owner, has scheduling priority. *Id.* ¶ 4. Despite the terms of the Agreement, Bondio used the Airplane more than its allocated share, refused Flying R and other owners access to or use of the Airplane, invoiced Flying R for fuel costs without providing documentation, charged late fees and usage fees not authorized by the Agreement, and failed to provide Flying R with flight logs and maintenance records. *Id.* ¶ 6.

On June 6, 2022, Flying R filed this breach-of-contract action against Bondio in the 162nd Judicial District of Texas. Doc. 1-2, Orig. Pet. Bondio removed the case to this Court on June 21, 2022, and filed its First Amended Answer, Affirmative Defenses and Counterclaims on July 8, 2022. Doc. 1, Not. Removal; Doc. 7, Am. Answer. Bondio's counsel subsequently moved to withdraw from the representation due to Bondio's lack of communication and lack of participation in the discovery process. Doc. 20, Mot. Withdraw. The Court granted the Motion to Withdraw on November 8, 2022. Doc. 36, Am. Order. In this Amended Order, the Court informed Bondio that, as a corporate entity, it could not proceed in the matter without counsel. *Id.* at 2. The Court ordered Bondio to obtain new counsel and have counsel file a notice of appearance by December 7, 2022. *Id.* at 3. The Order warned, "If Bondio fails to comply with this Order, Bondio will be subject to default judgment." *Id.*

The deadline passed without new counsel appearing. On December 12, 2022, the Court ordered Flying R to move for entry of default and default judgment. Doc. 41, Order. Flying R filed two motions. Flying R moved to strike Bondio's pleadings and dismiss its counterclaims with prejudice. Doc. 45, Mot. Strike. The Court granted the motion. Doc. 50, Order. Flying R also filed a Motion for Default Judgment. Doc. 46, Mot. Default J. The Court found Flying R had not shown a sufficient basis in the pleadings for its breach-of-contract claim and denied this Motion. Doc. 52,

Mem. Op. & Order, 1. However, the Court granted Flying R leave to amend, Doc. 54, Order, and Flying R filed its Second Amended Complaint (Doc. 55). Flying R now again moves for default judgment. *See* Doc. 57, Mot. Default J. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2).

That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, "the entry of default judgment is committed to the discretion of the district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

Courts have developed a three-part analysis to guide this discretion. *See, e.g.*, *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the

default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, the Court assumes that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiffs should receive. *Ins. Co. of the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

The Court finds default judgment is appropriate. Default judgment is procedurally warranted because Bondio has completely stopped participating in this case. Flying R has shown a basis for

judgment on its breach-of-contract claim in the pleadings. And the Court finds Flying R has shown its is entitled to some, but not all, of its requested damages. Accordingly, the Court **GRANTS in part** and **DENIES in part** Flying R's Motion for Default Judgment (Doc. 57).

A. *Entry of Default Judgment Is Procedurally Warranted*

After reviewing Flying R's Motion in light of the six *Lindsey* factors, the Court determines that default judgment is procedurally warranted. First, Bondio is in default. *See* Doc. 51, Entry Default. Consequently, there are no material facts in dispute. *See Lindsey*, 161 F.3d at 893; *Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Bondio's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Flying R]'s interests." *See Ins. Co. of the W.*, 2011 WL 4738197, at *3. Third, the grounds for default are "clearly established," as Bondio has not obtained counsel or otherwise communicated with the Court on this matter. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that "[d]efault judgment is appropriate if defendants are totally unresponsive") (internal quotations and citation omitted). Fourth, there is no evidence before the Court to indicate that Bondio's silence is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. In fact, Bondio notified the Court of an error in Bondio's address, suggesting it was aware of the Court's orders in this case. Fifth, and relatedly, the harshness of a default judgment is warranted in this case, as Bondio has failed to obtain legal counsel after an order from this Court and has not communicated with the Court in nearly a year. *See id.* Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Bondio. *See id.* Therefore, the Court concludes that default judgment is procedurally warranted.

B.     *A Sufficient Substantive Basis for Judgment Exists in the Pleadings*

In light of the entry of default, Bondio is deemed to have admitted the allegations set forth in Flying R's Second Amended Complaint. *See Nishimatsu*, 515 F.2d at 1206. However, Bondio "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.* Thus, the Court must review the pleadings to determine whether they provide a sufficient basis for Flying R's claim for relief. *See id.* In conducting this analysis, the Fifth Circuit draws "meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Flying R alleges that Bondio breached the Agreement. Doc. 55, Second Am. Compl., ¶¶ 43–47. To prevail on its breach of contract claim, Flying R must show "(1) the existence of a valid contract, (2) performance or tendered performance by [Flying R], (3) breach of the contract by [Bondio], and (4) damages sustained by [Flying R] as a result of the breach." *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).[1]

Applying the four breach-of-contract elements to this case, the Court finds a sufficient basis in the pleadings for judgment on Flying R's breach-of-contract claim. First, Flying R alleges that the

---

[1] The Agreement contains a Texas choice-of-law provision. *See* Doc. 58, Mot. App., 129. Under Texas choice-of-law rules, such a choice-of-law provision will be enforced unless the chosen state has no relationship to the matter or the selected law would violate a fundamental public policy of Texas. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990). Neither exception applies in this case. The Court therefore applies Texas law to Flying R's breach-of-contract claim.

Agreement constitutes a contract. *See* Doc. 55, Second Am. Compl., ¶¶ 17–19, 43. Second, Flying R alleges it performed its obligations under the Agreement, including managing the Airplane and paying its share of costs and operating expenses. *Id.* ¶¶ 24–26, 44. Third, Flying R alleges that Bondio breached the contract by

> (1) using the Airplane more than its allocated time; (2) refusing to allow Flying to use the Airplane in accordance with its allocated time; (3) interfering with Flying R's status as Managing Party; (4) attempting to use the Airplane without first scheduling such use with the other owners; (5) failing to provide back-up documentation for monthly invoices; (6) refusing to provide flight logs and maintenance records; and (7) charging late fees not permitted by the [Agreement].

*Id.* ¶ 46; *see also id.* ¶¶ 27–39. Fourth, Flying R alleges that Bondio's breach caused Flying R injury, including being unable to access the Airplane. *Id.* ¶¶ 35, 47. Thus, because the Court accepts Flying R's factual allegations as true, *see Nishimatsu*, 515 F.2d at 1206, the Court finds a sufficient basis in the pleadings for the requested default judgment on the breach-of-contract claim.

C.  *Flying R Is Entitled to Damages and a Permanent Injunction*

Having determined default judgment is proper on Flying R's breach-of-contract claim, the Court addresses Flying R's requested relief. Flying R seeks: (1) actual damages, (2) prejudgment interest, (3) attorneys' fees, (4) costs and expenses, (5) postjudgment interest, and (6) a permanent injunction. Doc. 55, Second Am. Compl., ¶ 70; Doc. 57, Mot. Default J., 15–17. The Court must now determine whether Flying R's Motion, along with its attached supporting documentation, allows the Court to award Flying R damages.

1.  Actual Damages

Courts routinely find that copies of contracts, invoices, purchase orders, emails with payment details, and statements of anticipated costs, together with computations and affidavits, are a

sufficient evidentiary basis for a damages award. *See, e.g.*, *Can Cap. Asset Servicing, Inc. v. Azket E-Intel. LLC*, 2021 WL 2474159, at *4 (N.D. Tex. June 17, 2021) (Boyle, J.). Flying R requests $263,124.49 in actual damages, including $137,500 for Bondio's failure to pay eleven months of fixed operating costs, $60,947.48 for improper invoices and late fees Bondio issued Flying R, and $64,677.01 to remedy Bondio's failure to provide scheduled maintenance for the Airplane in breach of the Agreement. Doc. 57, Mot. Default J., 15.

Flying R's Motion for Default Judgment Appendix provides declarations and documents showing Flying R incurred the requested monetary damages. Doc. 58, Mot. App. These include the Agreement, *id.* at 119–31, a declaration from Lynn Reece, an agent of Flying R who has personal knowledge of this matter, *id.* at 2–5, invoices and correspondence regarding the unauthorized charges Bondio issued and the unpaid fixed operating costs, *id.* at 7–34, and a declaration of Norm Koerner, who performed maintenance for the Airplane, *id.* at 35–36. Based on these supporting documents, the amount of actual damages can be determined with mathematical calculation. Thus, the Court **GRANTS** Flying R's request for $263,124.49 in actual damages.

    2.    <u>Prejudgment Interest</u>

Flying R requests prejudgment interest at a rate of 7.75% per annum from the date of its original complaint, June 6, 2022, through the day before the Court enters a default judgment in this case. Doc. 57, Mot. Default J., 14–15. Pre-judgment interest rates are governed by state law in diversity cases. *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). As explained in footnote 1, *supra*, Texas law governs Flying R's claim because the Agreement contains a Texas choice-of-law provision. *See* Doc. 58, Mot. App., 129. Therefore, Texas law governs the award of prejudgment interest.

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (internal quotation omitted). "There are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Id.* "Under Texas law an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (alteration omitted).

However, the Court cannot award the requested prejudgment interest. Because prejudgment interest is compensation for lost use between the accrual of the claim and the date of the judgment, the Court cannot simply award prejudgment interest on the total actual damages from June 6, 2022, until the date of the judgment. As discussed above, the damages for unpaid operating costs have accrued monthly. And Flying R has not provided the Court with the dates the other damages—damages from Bondio's unauthorized charges and failure to perform maintenance—accrued. Thus, on this record, the damages cannot be calculated mathematically. *See James*, 6 F.3d at 310. The Court therefore **DENIES WITHOUT PREJUDICE** the request for an award of prejudgment interest. Flying R may renew its request in a supplemental motion as described at the conclusion of this Order. The supplemental motion must calculate the applicable prejudgment interest from the dates the damages accrued.

3. Attorneys' Fees

Flying R next requests reasonable and necessary attorneys' fees of $226,525.40. Where, as here, the parties are litigating "a contract that contains a valid choice of law clause, the parties'

choice of law governs . . . the award of attorneys' fees." *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993). Thus, Texas law applies to the award of attorneys' fees. *See* Doc. 58, Mot. App., 129.

In Texas, a prevailing party in a civil action may recover attorneys' fees in a claim for an oral or written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8). While "§ 38.001(8) uses the term 'may,' the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.2 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). The Agreement also provides for reasonable attorneys' fees. Doc. 58, Mot. App., 144.

Under Texas law, "[w]hen a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Texas courts typically evaluate reasonableness and necessity using the two-step lodestar method. *Id.* at 501. First, courts calculate the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate for such work. *Id.* Then courts apply the *Arthur Andersen* factors[2] to determine whether the lodestar should be adjusted. *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d

---

[2] They are
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

812, 818 (Tex. 1997)). The party seeking attorneys' fees must provide, "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502.

Here, Flying R's attorney, Andrew K. York, has provided an affidavit and timekeeping record detailing the amount of time spent and work performed in this case. Doc. 58, Mot. App., 263–319. Mr. York avers that he and other attorneys in his firm performed 404 hours of work at rates ranging from $275 to $675 per hour, for a total fee of $226,525.40. *See id.* at 263–65. He attaches heavily redacted copies of their billing entries to his affidavit. *See id.* at 269–319.

The Court is unable to conclude the requested attorneys' fees are reasonable for several reasons. First, the billing entry redactions prevent the Court from determining the "particular services performed." *See Rohrmoos*, 578 S.W.3d at 502. Many do not contain the subject matter of the task or what was done. Courts applying federal law have disallowed or reduced such inadequate requests. *See, e.g.*, *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *3 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.). The Court similarly finds the billing entries inadequate under Texas law. *See Rohrmoos*, 578 S.W.3d at 502.

Second, Flying R has not shown that its staffing decisions were reasonable. "While parties are free to hire lawyers to staff a case as they see fit, when seeking reimbursement for their attorneys' fees, the court will award only what is reasonable." *Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, 2022 WL 508334, at *5 (S.D. Tex. Feb. 18, 2022). Thus, courts have reduced attorneys' fees requests for lack of billing judgment when cases were overstaffed with overqualified attorneys. *See,*

*e.g.*, *id.*; *Preston Expl. Co., LP v. GSP, LLC*, 2013 WL 3229678, at *7 (S.D. Tex. June 25, 2013). Here, Mr. York's declaration shows that over 94% of the hours billed in this case were billed by Mr. York, Skyler Stuckey, William Drabble, and Russell Jumper, all of whom are partners. Doc. 58, Mot. App., 264–65.[3] Flying R does not explain why more of the tasks could not be accomplished by associates, staff attorneys, or paralegals. And the billing entry redactions largely prevent the Court from making its own assessment. Thus, the Court cannot conclude that Flying R exercised reasonable billing judgment.

Finally, the Court cannot conclude the requested amount is reasonable because it includes billing related to drafting and filing the Second Amended Complaint and Second Motion for Default Judgment. *See id.* at 309. The Court finds it inappropriate to award Flying R attorney's fees for time spent remedying deficiencies in its First Amended Complaint and First Motion for Default Judgment. *See, e.g.*, *Paisano Cap. SA de CV v. Velazquez*, 2020 WL 1890702, at *4 (S.D. Tex. Apr. 16, 2020) (declining to award attorneys' fees for time spent drafting and filing a second motion for default judgment that was necessary to correct deficiencies in a prior motion). To hold otherwise would punish a party for the mistakes of opposing counsel.

Although courts have chosen to reduce fee awards for each of these deficiencies, the Court finds it appropriate to give Flying R an additional opportunity to demonstrate that its requested fees are reasonable. The Court therefore **DENIES WITHOUT PREJUDICE** Flying R's request for attorneys' fees. Flying R may renew its request in a supplemental motion as described at the conclusion of this Order.

---

[3] After reductions, 380 of the 404 total hours were billed by partners. *See* Doc. 58, Mot. App., 265.

### 4. Costs and Expenses

Flying R also seeks $1,691.65 in costs and expenses, representing $144.84 in filing fees, $1,334.21 in costs associated with citations and service on Bondio, $35.19 for photocopies and conference calls, $18.00 in parking fees, and $164.24 in Westlaw charges. Doc. 58, Mot. App., 267. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. Fed. R. Civ. P. 54(d)(1). "The Supreme Court has indicated that federal courts may only award those costs articulated in [28 U.S.C. §] 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (internal quotation omitted); *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Section 1920 provides

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. Because taxable costs include "[f]ees of the clerk and marshal," Flying R is entitled to $144.84 for its filing fees. *See id.* § 1920(1). However, the other requested costs may not be taxed as costs.

Flying R seeks costs associated with serving Bondio. Doc. 58, Mot. App., 267. However, Flying R used a private process server. *See id.* at 281. "[C]osts for private process servers are not

recoverable, absent exceptional circumstances." *Zastrow v. Hous. Auto M. Imps. Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) (per curiam); *accord BITX Transp. Servs.*, 2021 WL 4990805, at *7 & n.6 (Boyle, J.) (holding that private process server fees are not recoverable costs absent exceptional circumstances). Here, Flying R's service fees are not "fees of the clerk or marshal" under § 1920, and Flying R has not argued that exceptional circumstances exist in this case. Thus, Flying R's service fees are not taxable as costs.

Flying R also seeks $35.19 for photocopies and conference calls and $18.00 for parking fees. Section 1920 does not expressly allow recovery of conference call costs or parking fees. 28 U.S.C. § 1920. And Flying R cites no other statutory or contractual basis for taxing them as costs. The Court therefore declines to award costs for conference call or parking expenses. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Cap., Inc.*, 952 F. Supp. 415, 418 (N.D. Tex. 1997) (Boyle, Mag. J.) (holding telephone and attorney travel expenses cannot be taxed as costs under § 1920). By contrast, § 1920 permits courts to award costs for "copies of papers necessarily obtained for use in the case." Therefore, before a district court can properly tax costs for photocopies, it must make a determination that the copies being requested "were necessarily obtained for use in the litigation." *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir. 1994) (per curiam). The party seeking the costs must offer proof of necessity. *Id.* The only information Flying R has provided is line items in a client billing sheet listing photocopies as expenses and a declaration from Mr. York stating that Flying R incurred $35.19 expenses for photocopies and conference calls. Flying R provides no explanation for the Court to discern which copies were necessary. Thus, the Court declines to award Flying R its requested photocopy costs.

Flying R's legal research expenses cannot be taxed as costs either. *See Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 581–82 & n.3 (W.D. Tex. 2010) (collecting cases and noting "the overwhelming weight of authority in this and other circuits" indicates online research expenses cannot be taxed as costs under § 1920). However, legal research expenses may be recovered as attorneys' fees if counsel normally bills such expenses to its clients. *See Fluor Corp. v. Citadel Equity Fund Ltd.*, 2011 WL 3820704, at *6 (N.D. Tex. Aug. 26, 2011) (Boyle, J.). The Court will therefore permit Flying R to renew its request for its Westlaw charges in a supplemental motion for attorneys' fees if its counsel normally bills such expenses to its clients.

In summary, the Court **GRANTS** Flying R's request for costs to the extent that it seeks to recover $144.84 for its filing fees. It **DENIES** the request as to the $1,334.21 associated with citations and service on Bondio, $35.19 for photocopies and conference calls, $18.00 in parking fees, and $164.24 in Westlaw charges. The Court further allows Flying R to renew its request for $164.24 in Westlaw charges in a supplemental motion for attorneys' fees if it can show the requested amount for research costs is reasonable and it normally bills such expenses to its clients.

### 5.    Postjudgment Interest

Flying R requests postjudgment interest at the statutorily determined rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Simply put, district courts do not have the discretion to deny postjudgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). The Court **GRANTS**

Flying R's request for postjudgment interest on all damages awarded herein, at the statutory rate,[4] from the entry of the final default judgment until paid.

      6.    <u>Permanent Injunctive Relief</u>

When a federal court is sitting in diversity, "state law provides the standard as to whether a permanent injunction should issue." *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 925 n.12 (N.D. Tex. 2020) (Lindsay, J.) (citing 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4513 (3d ed. 2016 & Supp. 2019)). To be entitled to a permanent injunction under Texas law, "a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020). However, in cases involving real or personal property, a court may issue an injunction if "irreparable injury to real or personal property is threatened, irrespective of any remedy at law." Tex. Civ. Prac. & Rem. Code § 65.011(5). "Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities." *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.).

Flying R has shown the first two elements of a permanent injunction. First, it has shown a wrongful act: Bondio has denied Flying R access to the Airplane as provided under the Agreement. And it has also shown imminent harm: Bondio continues to deny Flying R access to the Airplane,

---

[4] Postjudgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). For the calendar week preceding the judgment, the average rate was 5.33 percent per annum. *See Selected Interest Rates (Daily) - H.15*, https://www.federalreserve.gov/releases/H15/data.htm; Federal Reserve Bank of St. Louis, *Selected Interest Rates Instruments, Yields in percent per annum: Weekly*, https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od=2023-07-21#.

which harms both Flying R's property rights and potential business opportunities. Doc. 58, Mot. App., 51. Bondio has given no indication that it intends to change its behavior.

Third, Flying R has shown irreparable injury.[5] As the Texas Supreme Court has explained in the context of temporary injunctions, "[a]n injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The same is true for permanent injunctions. *See, e.g.*, *Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 260 (Tex. App.—Austin 2022, no pet.) (applying *Butnaru*'s irreparable injury test to a permanent injunction request). And under Texas law, serious interference with the right to use one's property can also constitute irreparable injury. *See, e.g.*, *Craft v. Freeport Oil Co.*, 563 S.W.2d 866, 868 (Tex. App.—Amarillo 1978, no writ).

For two reasons, the Court finds Bondio's continued interference with Flying R's right to use the Airplane constitutes irreparable injury. First, it is serious interference with the use of Flying R's property. *See id.* Flying R has been denied access to its property entirely; Bondio has essentially held the plane hostage without asserting any plausible justification for doing so. And second, the measure of damages could not be measured with any certain standard. The Court would need to determine the value of Flying R's access to the Airplane. This analysis would include determining not only Flying R's enjoyment of the Airplane, but also what business opportunities, if any, Flying R lost.

---

[5] Although section 65.011(5) states an injunction may issue if "irreparable injury to real or personal property is *threatened*," *see* Tex. Civ. Prac. & Rem. Code § 65.011(5) (emphasis added), the Texas Supreme Court has held that this language does not displace "the showing of irreparable harm otherwise required by equity," *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam). Thus, Flying R must show irreparable injury even under section 65.011(5). *See id.*

Under these circumstances, "damages cannot be measured by any certain pecuniary standard." *See Butnaru*, 84 S.W.3d at 204. For these reasons, Flying R has shown irreparable injury.

And although such a showing is not required under section 65.011(5),[6] the Court finds the remedies at law are inadequate. *See Mullen v. Cheatham*, 1999 WL 1095917, at *2 (Tex. App.—Dallas Dec. 6, 1999, pet. dism'd) ("No adequate remedy at law exists if something destroys or seriously interferes with an owner's use of property."). Even if Flying R could, in theory, recover damages for the ongoing breach of the Agreement through a series of breach-of-contract actions, this would not be an adequate remedy at law. "It is not enough for some legal remedy to exist, but the remedy at law must also be as practical, available, and effectual as the remedy at equity." *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ). A series of breach-of-contract actions would not be as "practical, available, and effectual" as a permanent injunction. *See City of Wichita Falls v. Bruner*, 191 S.W.2d 912, 920 (Tex. App.—Fort Worth 1945, writ ref'd w.o.m.) ("We think it is in harmony with our system of jurisprudence for one party to avail himself of the equitable remedy of injunction and stop the offending act, rather than permit it to continue and rely, in the future, upon a series of lawsuits filed within the limitation periods."). The remedies at law are therefore inadequate.

Finally, the respective conveniences and hardships of the parties favor Flying R, which has been wrongly deprived of use of the Airplane for a significant length of time. By contrast, the requested injunction only requires Bondio to comply with the Agreement and prohibits Bondio from

---

[6] Under section 65.011(5), a court may issue an injunction if "irreparable injury to real or personal property is threatened, *irrespective of any remedy at law*." Tex. Civ. Prac. & Rem. Code § 65.011(5) (emphasis added).

violating the Agreement in the future. Bondio will be allowed to continue use of the Airplane in accordance with the Agreement. Thus, the Court concludes the balance of the equities favors a permanent injunction.

Flying R has demonstrated each of the necessary requirements for the issuance of a permanent injunction. Accordingly, the Court **GRANTS** Flying R's request for a permanent injunction that enjoins Bondio as follows:

> Bondio and its respective representatives, agents, principals, managers, members, officers, employees or attorneys and all of those persons in active concert or participation with said individuals who receive actual notice of the permanent injunction are prohibited from exercising or attempting to exercise any control over, possession of, or use of the Airplane as the purported "Managing Party" of the Airplane without the express, written consent of Flying R;
>
> Bondio and its respective representatives, agents, principals, managers, members, officers, employees or attorneys and all of those persons in active concert or participation with said individuals who receive actual notice of the permanent injunction are prohibited from interfering with Flying R's use, possession, or enjoyment of the Airplane;
>
> Bondio and its respective representatives, agents, principals, managers, members, officers, employees or attorneys and all of those persons in active concert or participation with said individuals who receive actual notice of the permanent injunction are prohibited from scheduling service, maintenance, support service, or flight crews relating to the Airplane in any manner inconsistent with the Co-Ownership Agreement; and
>
> Bondio and its respective representatives, agents, principals, managers, members, officers, employees or attorneys and all of those persons in active concert or participation with said individuals who receive actual notice of the permanent injunction shall immediately produce to Flying R all maintenance records, flight books, and other logs related to the Airplane that have not already been turned over to Flying R's counsel during this litigation and ordering that Bondio and its respective representatives, agents, principals, managers, members, officers, employees or attorneys are prohibited from seeking the return of any such documents turned over to Flying R's counsel during this litigation.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Flying R's Motion for Entry of Default Judgment (Doc. 57) insofar as it seeks entry of a default judgment. Further, the Court **GRANTS in part** and **DENIES in part** Flying R's requests for relief. The Court grants Flying R's request for actual damages in the amount of $263,124.49 and court filing costs in the amount of $144.84, for a total recovery of $263,269.33 plus postjudgment interest at the statutory rate of 5.33 percent per annum. Additionally, the Court grants Flying R's request for permanent injunctive relief.

The Court **DENIES WITHOUT PREJUDICE** Flying R's request for prejudgment interest and attorneys' fees. Flying R may file a supplemental motion seeking prejudgment interest and attorneys' fees if it can remedy the deficiencies identified in this order. Any such motion must be filed within **THIRTY (30) DAYS** of this Order. Flying R's other requests for relief are **DENIED WITH PREJUDICE**.

**SO ORDERED**.

**SIGNED: July 26, 2023**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE