UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLYING R AVIATION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1341-B |
| | § | |
| BONDIO, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Flying R Aviation, LLC ("Flying R")'s Supplemental Motion Seeking Prejudgment Interest and Attorneys' Fees (Doc. 61). The Court **GRANTS in part** and **DENIES in part** the Motion.

### I.

### BACKGROUND

This case involves a contract dispute regarding the co-ownership of an airplane. The Court previously granted Flying R's Second Motion for Entry of Default Judgment but declined to award Flying R prejudgment interest on its damages or its attorneys' fees. Doc. 60, Mem. Op. & Order, 8–12. The Court awarded Flying R actual damages of $263,124.49, court filing costs, post-judgment interest, and permanent injunctive relief. *Id.* at 20.

The Court did not award prejudgment interest because Flying R did not specify when specific damages accrued, which meant "the damages cannot be calculated mathematically." *Id.* at 9. The Court also identified three deficiencies with Flying R's request for attorneys' fees: (1) Flying R's attorneys "heavily redacted . . . their billing entries," which meant the Court could not evaluate the

services performed by its lawyers; (2) Flying R failed to show its staffing decisions were reasonable; and (3) it would be "inappropriate to award Flying R attorney's fees for . . . remedying deficiencies in its First Amended Complaint and First Motion for Default Judgment." *Id.* at 11–12.

Flying R filed this Supplemental Motion seeking to address the Court's concerns. Doc. 61, Mot. Flying R has specified the dates of its injuries resulting from Defendant Bondio, LLC ("Bondio") breaching their contract—some of which accrued before Flying R initially filed this lawsuit, and others which accrued after Flying R had already filed suit. *Id.* at 2–4. In sum, Flying R seeks a total of $17,364.18 in prejudgment interest. *Id.* at 4. Flying R also addressed the Court's concerns regarding attorneys' fees by filing a lightly redacted version of its billing entries, explaining why the vast majority of work was performed by partners, and clarifying that it was not seeking attorneys' fees for the work done in filing the Second Amended Complaint or Second Motion for Default Judgment. *Id.* at 5–6. Flying R seeks $214,832.00 in attorneys' fees. *Id.* at 7. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A. *Prejudgment Interest*

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (citation omitted). "There are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Id.* "Under Texas law an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."

*Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (alteration omitted). Prejudgment interest rates are governed by state law in diversity cases. *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002).

    B. *Attorneys' Fees*

In Texas, a prevailing party in a civil action is entitled to recover attorneys' fees in a claim for an oral or written contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8). While § 38.001(8) "uses the term 'may,' the Texas Supreme Court has declared that attorneys' fees under [§] 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.2 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)).

Under Texas law, "[w]hen a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). The party seeking attorneys' fees must provide, "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Texas courts use a two-step lodestar method to evaluate reasonableness and necessity. *Id.* at 501. First, courts calculate the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate for such work. *Id.* Second, courts determine whether the lodestar should be adjusted. *Id.*

## III.

## ANALYSIS

The Court grants Flying R's request for prejudgment interest and, when applying the lodestar method, finds the attorneys' fees it seeks are reasonable.

*A. The Court Awards Flying R Prejudgment Interest*

As discussed above, the Court previously declined to award Flying R prejudgment interest because the Second Motion for Default Judgment did not clarify when certain damages accrued. Under Texas law, "prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Johnson & Higgins of Texas*, 962 S.W.2d at 531. In breach of contract cases, the default rule is that courts calculate prejudgment interest "as simple interest . . . based on the postjudgment interest rate applicable at the time of judgment." *Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 514 (Tex. App.—El Paso 2018, no pet.).

In its Supplemental Motion, Flying R divides damages into two categories: (1) those that occurred pre-suit and (2) those that occurred post-suit. Doc. 61, Mot., ¶¶ 6–7. The prejudgment interest for the pre-suit damages began to accrue when Flying R filed the lawsuit on June 6, 2022, and ran until the Court granted the Second Motion for Default Judgment on July 26, 2023.[1] *See Johnson & Higgins of Texas, Inc.*, 962 S.W.2d at 531. Flying R argues that the prejudgment interest as to its asserted post-suit damages should accrue starting on the dates that they occurred, and Flying R provided invoices establishing when each injury occurred, as previously requested by the Court. *Id.* ¶ 7. The Court agrees and finds that the prejudgment interest for these injuries began accruing on the day Flying R suffered them.

---

[1] Flying R only moves for the prejudgment interest that accrued through the date of default judgment. Doc. 61, Mot., ¶ 6.

The Texas Office of Consumer Credit Commissioner sets the post-judgment interest rate. TEX. FIN. CODE § 304.003(a)–(b). To calculate the prejudgment interest, the Court uses the post-judgment interest rate as of July 26, 2023, the date the Court granted the Second Motion for Default Judgment. *Siam*, 544 S.W.3d at 514. On July 26, 2023, the Texas Office of Consumer Credit had set the judgment rate at 8.25%. TEX. OFFICE OF CONSUMER CREDIT COMM'R, 42 *Texas Credit Letter* 50 (2023), https://occc.texas.gov/sites/default/files/2023-12/credit-letters-2023.pdf. Accordingly, the Court will calculate prejudgment interest for Flying R's pre-suit and post-suit injuries at a rate of 8.25%. Flying R provided calculations in its Supplemental Motion, Doc. 61, Mot., 3–4, and after review, the Court awards Flying R the $17,364.18 in prejudgment interest that it requested.

B. *Flying R's Requested Attorneys' Fees Are Reasonable*

The Court also awards Flying R $211,922.00 in attorneys' fees. Flying R seeks attorneys' fees for six individuals who worked on this case, according to the following:

| Name | Position | Hourly Rate | Hours Billed | Total fees |
|---|---|---|---|---|
| Andrew K. York | Partner | $640/hour | 57.8 | $36,992.00 |
| Skyler Stuckey | Partner | $550/hour | 317.1 | $174,405.00 |
| London England | Senior Associate | $465/hour | 3.4 | $1,581.00 |
| Michael Lillibridge | Staff Attorney | $320/hour | 9.2 | $2,944.00 |
| Chris Donaldson | Paralegal | $275/hour | 8.4 | $2,310.00 |
| Suzy Langley | Legal Assistant | $200/hour | 3.0 | $600.00 |
| **Initial Totals** | | | 398.9 | $218,832.00 |
| **Discount** | | | | $4,000.00 |
| **Total Fees Sought** | | | | $214,832.00 |

Doc. 62, Mot. App'x, 8.

Flying R deducted $4,000 from its request for attorneys' fees "based on a $4,000 discount" its attorneys gave to Flying R. Doc. 62, Mot. App'x, ¶ 5. In sum, Flying R seeks $214,832.00 in attorneys' fees. The Court must assess whether "the requested fees are both reasonable and necessary." *Rohrmoos Venture*, 578 S.W.3d at 489.

The first step in this inquiry is determining the reasonable number of hours worked on this case. *See id.* at 501. Flying R's legal team billed a total of 398.9 hours on this case—the attorneys provided billing records detailing the tasks each member of its legal team performed in connection with this case and indicating when each member performed these tasks. *See generally* Doc. 62, App'x; *see Rohrmoos Venture*, 578 S.W.3d at 502.

Given the relative complexities surrounding this case, the Court determines 398.9 hours is a reasonable amount of time. The dispute here was regarding the parties' co-ownership of a private airplane where Flying R alleged Bondio breached the co-ownership agreement and invoiced Flying R for costs it was not required to pay. Doc. 60, Mem. Op. & Order, 1–2. While the Court eventually granted default judgment, Bondio initially defended this lawsuit in both state and federal court. Doc. 1, Notice Removal, 1–2; Doc. 60, Mem. Op. & Order, 2. Early in this litigation, Flying R billed a significant amount of time towards filing applications for a temporary restraining order and a preliminary injunction. *Id.* Further, the hours Flying R's attorneys billed match the history of this case because most of the hours were billed early in the proceedings, when Bondio was still defending itself, as opposed to later in the lawsuit after Bondio defaulted. *See generally* Doc. 62, App'x, Ex. B. On December 12, 2022, the Court ordered Flying R to move for an entry of default and default judgment. Doc. 41, Order. Of the 398.9 hours that Flying R is seeking to recover, 330.3 of these

hours were billed before that Court Order, which further supports the reasonableness of the hours worked. *See generally* Doc. 62, App'x, Ex. B. After reviewing the billing records and considering the history of this case, the Court finds that billing approximately 400 hours on this case was reasonable as "the time billed was not excessive, duplicative, or inadequately documented." *See Burrell v. Akinola*, No. 3:15-CV-3568-B, 2018 WL 259457, at *1 (N.D. Tex. Jan. 2, 2018) (Boyle, J.).

Flying R also seeks to recover fees for work done by a paralegal and a legal assistant. Doc. 62, Mot. App'x, 8. "An award of attorney's fees may include a legal assistant's time to the extent that the work performed has 'traditionally been done by any attorney.'" *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 503 (Tex. App.—Texarkana 2005, no pet.) (citation omitted). However, "a fee award cannot compensate for work performed by non-attorney staff members without evidence showing the staff members' qualifications to perform the substantive legal work and showing that the staff member performed the substantive legal work under the direction and supervision of an attorney." *Land v. Land*, 561 S.W.3d 624, 641–42 (Tex. App.—Houston 2018 [14th Dist.], pet. denied) (citation omitted). Here, Flying R fails to discuss the qualifications of the paralegal, Chris Donaldson, and the legal assistant, Suzy Langley, to perform substantive legal work. *See id.* Flying R also fails to show whether any substantive legal work performed by these individuals was done "under the direction and supervision of an attorney." *See id.* Accordingly, the Court cannot award Flying R the fees for work done by the paralegal or legal assistant.

Finally, the Court concludes that Flying R's staffing decisions were reasonable. 93% of the hours Flying R seeks to recover were performed by partners. *See* Doc. 62, Mot. App'x, 8. "While parties are free to hire lawyers to staff a case as they see fit, when seeking reimbursement for their attorneys' fees, the court will award only what is reasonable." *Calsep A/S v. Intelligent Petroleum*

*Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 508334, at *5 (S.D. Tex. Feb. 18, 2022). In the Supplemental Motion, Flying R offered several reasons justifying its staffing decisions. Flying R also attached an affidavit from Andrew York, the lead partner for the case. First, York explained that this case was complex because it involved multiple co-ownership agreements, and the different agreements contained some distinctions which York claimed could have affected the "resolution of this case." Doc. 62, Mot. App'x, York Aff., ¶ 10. Further, Flying R was seeking immediate injunctive relief, which was facilitated by partner Skyler Stuckey's experience with preliminary injunctions. *Id.* Second, York also explained that Stuckey did around 80% of the work on this case because Flying R trusted Stuckey's judgment and because York believed this case would provide Stuckey with great experience in managing a full case. *Id.* ¶ 11. Third, York stated that adding less experienced attorneys could have resulted in additional fees caused by "multiple layers of drafting, review, and editing of work product." *Id.* The Court finds that these explanations justify Flying R's staffing decisions.

The second step is determining whether the hourly rates are reasonable. "The reasonable hourly rate is the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-CV-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (citation omitted). Here, York attested that the rates charged to Flying R were reasonable within the district based on his experience and personal knowledge. Doc. 62, Mot. App'x, York Aff., ¶ 4(a)–(c); *see BMO Harris Bank, N.A.*, 2014 WL 12612803, at *1. While some of these hourly rates are relatively high, especially York's and Stuckey's, the Court finds the rates are nevertheless reasonable based on the attorneys' experience, the complexity of the case, and comparable rates in this district. *See, e.g., Michaels Stores Procurement Co. v. DMR Constr., Inc.*, No. 3:18-CV-1436-B, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019)

(Boyle, J.) (approving attorney rates as high as $675.00 per hour). Accordingly, the Court finds the lodestar amount is $211,922.00 in attorneys' fees after subtracting the hours worked by the paralegal and legal assistant.

Lastly, the Court concludes that the base lodestar does not require any adjustments. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees." *Rohrmoos Venture*, 578 S.W.3d at 499. Courts apply the following factors to determine whether the lodestar should be adjusted:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Courts usually include the first, third, fourth, seventh, and eighth *Arthur Andersen* factors when first calculating the lodestar, so these factors generally cannot "be used to enhance or reduce" the lodestar. *See id.* at 501. The remaining factors indicate that no adjustment to the base lodestar is needed here. The second factor suggests this fee is reasonable because York has attested that at least one attorney, Stuckey, was unable to "take[e] on other matters involving significant work" because of his work on this case. Doc. 62, Mot. App'x, York Aff., ¶ 15(f); *see Arthur Andersen*, 945 S.W.2d at 818. Additionally, the fifth factor indicates this fee is reasonable because Flying R sought a temporary restraining order in state court, which necessarily placed tight deadlines on Flying R's attorneys, at least early in the case. *Id.* ¶ 15(b); *see Arthur Andersen*, 945 S.W.2d at 818. The sixth factor is neutral

as there is no evidence that Flying R has had a particularly long or special relationship with these attorneys. *Id.* ¶ 15(g); *see Arthur Andersen*, 945 S.W.2d at 818. Accordingly, the *Arthur Andersen* factors do not suggest the Court should deviate from the lodestar of $211,922.00 in attorneys' fees.

    C.  *The Court Declines to Conditionally Award Flying R Appellate Attorneys' Fees*

The Court declines to conditionally award Flying R attorneys' fees should Bondio appeal the Court's Order granting default judgment. Trial courts can only award conditional appellate attorneys' fees when the moving party supports its request with "evidence of their reasonableness." *Passmore v. Baylor Health Care Sys.*, No. 3:13-CV-5016-P, 2016 WL 8578058, at *2 (N.D. Tex. Jan. 5, 2016) (Solis, J.) (citation omitted). The Court is not convinced that awarding conditional appellate fees is reasonable at this time as it appears unlikely that Bondio would file an appeal after previously defaulting.

Additionally, Flying R has failed to provide sufficient evidence that an award of $50,000 in conditional appellate fees is reasonable. While Flying R's attorneys claim an appeal would take approximately eighty hours of work, the Court is not satisfied by this evidence in part because this estimate includes time for "prepar[ing] and attend[ing] oral argument *should the court of appeals require it.*" Doc. 62, App'x, York Aff., ¶ 23 (emphasis added). Because Flying R speculates as to whether the Fifth Circuit would require oral argument, the Court is not convinced that the requested conditional attorneys' fees are reasonable. *See Passmore*, 2016 WL 8578058, at *2. Accordingly, the Court denies Flying R's request for conditional attorneys' fees.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Flying R's Supplemental Motion for Prejudgment Interest and Attorneys' Fees (Doc. 61). Flying R is awarded $17,364.18 in prejudgment interest and $211,922.00 in attorneys' fees. The Court **DENIES** Flying R's request for conditional appellate fees.

**SO ORDERED.**

**SIGNED: February 22, 2024.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE